All rise. Please be seated. The next case called for oral argument is Gherardini v. Carlyle Community Unit School District 1. Counsel, whenever you're ready, may proceed. May I please report, Counsel, my name is Eric Terlizzi. I practice in Salem. I represent plaintiff appellant Darren Gherardini. I think this is a unique case, and I think whatever decision the court ultimately enters in this case and issues will probably be the only appellate opinion ever addressing the statute that is at question here. That is the supertenure statute commonly called. And why this is unique is because the supertenure statute provided that any special ed teacher who was a tenured teacher anywhere within the district on September 23, 1987, when the statute became law, and let me give the exact quote, shall enter into contractual continued service in each participating district. So unlike normal tenure, which is unique to each district, if I have 30 years in District A and I quit and take a job in District B, I am a non-tenured teacher in District B, just like a kid right out of college. But this statute very, very specifically says that's not the case with this small group that were grandfathered in of special ed teachers who were tenured in 1987. Despite the trial, despite the brief, despite everything else, the defendant apparently still does not recognize that very salient point in this case, which I think, given the clear language of that statute, could not be more clear is beyond argument. Kevin Meyer, who was the principal at Carlisle at the time Mrs. Garadini was hired in 2002 and who conducted the interview, specifically testified that when she was hired, she was not a tenured teacher. Joe Wilkerson, the current principal at Carlisle at the time of trial, testified that she wasn't tenured when she was hired because she would have had to put in the necessary years of service to become in Carlisle District to become tenured. Joe Nopcic, the current superintendent, testified she was not tenured at Carlisle until after she put in the requisite number of years at Carlisle, just like everyone else. Mr. Tulisi, let me ask you a question. How do you distinguish tenure from seniority? There's a difference, certainly, and I think it's kind of analogous to that old song, Love and Marriage. You can't have one without the other. You can't have, there is a difference. Tenure takes place now after four years. You have to grant tenure or you have to let the teacher go. Back then it was two years. But you cannot have tenure within the district without the requisite number of years of seniority. Okay, where does it say that? Why do you say that? Because normally you don't get tenure. You can't get tenure. A new hired teacher cannot be granted tenure. That's not a decision, that's the law. You have to have the requisite number of years of service before you're even eligible for tenure. I understand that. But when she was hired, she was put on step 22 of the salary pay steps. And she's getting her 35 years TRS, so the state recognizes her tenure, right? Well, yes, of course. The state and TRS would always recognize all certificated teaching that you have, no matter where it was in the state, of course. Okay, so what you claim in your complaint is that she lost an annual seniority bonus as well as adversely affected her retirement eligibility and benefits. Now, I'd like you to address this issue of jurisdiction under the collective bargaining agreement because the bonus at issue was something bargained for to a CBA long after she was hired, right? So can you address the jurisdiction issue for me? Sure, I'd be happy to, Your Honor. There are actually two things. There's the bonus, which I think the evidence showed would have totaled $9,400 or something like that. But there was also the 6% automatic increase the last four years if she had requisite seniority within the district. But again, that was the CBA. You're right, that was part of the CBA. But the point is on the jurisdictional question, Your Honor, nobody disputes what it says. We're not interpreting what it says. The question on this complaint is, one, is she deemed as a matter of law under count two of the complaint to have seniority because she in fact was a tenured teacher the day she was hired? Or two, are they stopped from denying under count one of the complaint on the promissory estoppel theory? So we don't have to get into the question of the Education Labor Relations Board trying to interpret what this CBA means. But if your damages are under that collective bargaining agreement and it went to arbitration, for example, wouldn't the arbitrator then determine the issues that you're asking us to determine? I mean, they would be raised there because they're the basis of getting the bonus. But clearly, either an arbitrator or the board would have... The board. The board, yeah. I don't know the terms about the CBA. I know. I'm not an education lawyer either. Some of it's kind of Greek to me. Well, I served on the high school board. You have my condolences. And the grade school board. I know that's a thankless job. But my point is the board would certainly not have jurisdiction or the expertise or the ability to determine the two questions that were presented to the trial court. One, did promissory estoppel prevent the district from denying what she was promised when she quit her job, was at that point in time 21 years seniority, and took this other job? Or two, what is the statewide application of this supertegra statute? It doesn't matter whether it's carried by Gary Deany. It doesn't matter what the CBA says. None of that matters. The question is when a special ed teacher who comes under that statute changes districts within the special ed district, does she start from square one again? Does she lose those retirement benefits, those seniority? And, again, the dollar amounts we're talking about may seem fairly modest, the 9,000 in bonus, the 20-some thousand dollars in the scheduled increase the last four years, which was not granted. But more importantly to Mrs. Gary Deany is that this affects her retirement for the next 30, 35 years because it's based on the last several years of her salary. So that, I mean, we're talking tens of thousands of dollars over her retirement, and that's what this case is really about. Well, I thought she was on the proper salary schedule. She was. So why does this affect her salary retirement? Because the district refused to treat her as a new teacher in the district and said, we're going to treat you the same as if you had flown in here from Idaho and applied for a job and started here. We'll put you on at the 21-year schedule, which they can do with any teacher. They can contractually agree. They can't contractually agree to give a new teacher tenure if they haven't met the statutory limit. Of course, here she had tenure because the statute says she had tenure. Don't you think that's some sort of admission that they recognized her tenure at 21 years when they put her on at 22? I mean, why would anybody do that? You're right. So why does she qualify there? But these other benefits, the bonus and the 6% increase the last four years, you're right, Judge. They want to have her take any of the two. They want to say, okay, we recognize 21-year seniority to put you on the 21-year schedule. But when it comes to this bonus that requires 25-year seniority, oh, no, you've got at that point four years. But tell me how that affects her long-term benefits. Because teacher retirement schedule, and, again, I'm certainly no expert on it. No, you're talking about the state teacher. The state. The TRS. The TRS is based on the highest salary of whatever number of years it is. And that's what's crucial about this case is those last four years, she should have been recognized. You don't have to interpret the CBA. If she had been recognized as having 21-year seniority when she was hired, she would have been no ifs, ands, or buts. Had she been a teacher at Carlyle for 21 years prior to 2002, she would have, those last four years, been entitled, rather than the negotiated step increase, she would have been entitled to an automatic 6% increase each of those four years. So you're saying that the CBA had the steps plus the percentage increase. That was the percentage increase denial that caused her the damage. Okay, so, again, we're under the CBA. We're under the CBA, but we didn't ask the court to interpret the CBA or say, I mean, we don't dispute what it said. They don't dispute what it says. Nobody's interpreting the CBA. It says if you had over 25 years in seniority, you're entitled to this annual bonus, and the last four years before retirement, you can get, and I guess it was an early retirement incentive type thing to get teachers, high-paid teachers to retire, rather than the negotiated, which, you know, was typically 2% or something, you got an automatic 6%. That's in the CBA, and nobody has to interpret it. We're not asking you to, I mean, it's an exhibit here because we had to get in the record what these provisions said, but nobody's asking the trial court or this court to interpret that. That's not in dispute. We agree completely with, well, I mean, it's just unambiguous language. What about the fact that this woman signed every year a piece of paper that said what her seniority status was? And I think they claim statute of fraud, but I'm not sure that's the appropriate issue. We've addressed that in the briefs, and I think that you're absolutely right. It's not applicable. But what about latches? Well, first of all, this was an ongoing breach each and every year. Second of all, this was an ongoing breach. This was an ongoing breach each and every year, we believe. Did she raise the breach? Well, I don't, first of all, I don't think latches was raised as a specific affirmative defense. Statute of frauds and statute of limitations were raised on motions, but unless I'm incorrect, latches was not raised as an affirmative defense, which it would have to be. But first of all, if our interpretation of the supertenure statute is correct, and let me just read you one other part of that statute, which I think is very important. This is 105 ILCS 5-24-11 sub I, which states, and I quote, employment in a special educational joint program shall be deemed a continuance of all previous certificated employment of such teacher for such joint agreement, whether the employer of the teacher was the joint agreement, the regional superintendent, or one of the participating districts in the joint agreement. But they read the rest of it, which is if she loses her job, basically, right? Well. Isn't that where the big rug is? Yeah. And she voluntarily left. So what? I mean. I just. She, the statute says she had. I just think so what? Yeah. I just think that that's their argument. Well, and that's why she's gone, so what? She had tenure. I'd like a little more lead, but no. I must have missed that class. I mean, with respect to your question, which I guess I got off on a tangent here. The fact that she signed that little thing that you're first of all, if the if the super stack, the issue is a question of law, the no vote to be decided by this court. And if it's law, I mean, I don't know how that's like saying the teacher could wait tenure or something. I mean, if that's the interpretation of the statute, it applies no matter what she signed, didn't sign, whatever. Well, that's where they get into this difference between seniority and tenure. And there was some indication from your client's testimony, I think, that she was misled. Maybe fraudulently misled. Believing that that number one dealt with some kind of special bonus. Yeah, there was just some fear. I don't remember. But we get into that. It was like $100 or something, $150. And so the first time it came up, you're right, the trial record shows that she went and said, you know, why? Why do I have this one here? And he said, oh, that's just this little, you know, don't worry about that. I mean, that's what the record says. And she understood that to be the case. But then that would also explain why the next year it was a two, a three, a four. For sure. That would be just a natural progression. Of course. But that gets us to that dichotomy I originally asked about between tenure and seniority. You don't believe that there's any difference. Well, no, I wouldn't say that. I mean, you know, tenure is just a... It's a right. It's a right. It's a protection for a teacher to avoid probably political influence and school boards and nepotism and all those bad things. But again, I mean, look at their argument. What they're saying, I mean, if you accept the fact that the statute means what it says and that since she was a tenured teacher, that statute says she was a tenured teacher in every district within KSED on September 23rd, 1987, that means she was a tenured teacher at the Colorado School District in 1987. Okay. By that statute. We accept that argument. Okay. Let's suppose we accept that. Okay. Tell me why then they can make the distinction between tenure and not giving her the benefits as under the seniority section. I don't think they can, Your Honor. Why? Well, because in 2002 when they hired her, okay, if she was a tenured teacher there, that means by law they can't give tenure to a teacher that's not entitled to tenure. Okay, but I'm talking seniority now. Right. But by law they couldn't have given her tenure. She couldn't have been a tenured teacher without the two-year service, without the two-year seniority. I'm accepting that. Okay. So that means that she had to, she was, she couldn't have, by law she couldn't have been deemed a new teacher, which is what every one of their witnesses said. If she wasn't a new teacher, she had seniority. She had at least the minimum requisite seniority for tenure. By law she was seven years. So she would have had at least four years seniority. Right. Of course, she had to have at least that. In fact, she had 21, which they themselves recognized on the salary schedule, but you cannot, a district cannot hire a new teacher to the district and give them tenure out of the blue. It's contrary to the statute. So they, even though they don't recognize that they gave her tenure, she was a tenured teacher at Carlisle the moment she was hired, 21 years before that. Or, wait a minute, 15 years before that, from 1980, whatever it was, 1987 to 2002, when the statute passed. So, yes, they're not interchangeable terms. It goes back to what I said. You can't have one without the other. So they're not completely separate and unrelated terms either. One has nothing to do with the other. They're inextricably bound together. You can't have one without the other. Can you explain what the attorney letter was from March 30, 1995, and how that played into this? Yeah, that was an opinion letter from the council for the special education district, that Mr. Wrench, the executive director, sent to each to clarify this exact point. And the opinion letter clearly stated and explained to all the superintendents that it was sent to and to the director, Mr. Wrench, and I think he's the one that requested it because there were questions about this, exactly what we've been talking about, that this group of teachers is unique and you can't treat them the same as you treat other new hires or new teachers. These teachers have tenure in your district whether you like it or not. And, I mean, that was clearly what... Now, obviously, that letter didn't address the very specific questions we have here, but it beyond doubt set forth that opinion, which all the districts should have known from 1995 on. But, again, that spoke of tenure. That spoke... And for some reason, this district sported up doing tenure and seniority. I'm not sure why. I'm not either. And your client was on the seniority list at 21 years when she was hired. Yeah, and that's right. And they knew about that. She was given this benefit, but then later when she qualified for this benefit, which required more than the 21 years, required 25 years, said, no, you're okay for the 21 years, we put you on there. So, obviously, she wouldn't have changed jobs if they put her on the salary schedule as a new teacher. And she was paid more money to make the change. She paid a little bit more, but it was essentially, we think, she characterized it as a lateral transfer. Her husband was employed in the Carlyle District. There were other... Her son went to school there. There were other reasons why it made sense to her, but certainly it wouldn't have made enough sense for her to just say, oh, I'm going to give up 21 years of seniority. So they promised, we'll put you on the salary schedule at 21, just like you had stayed at Sandoval. And her specific testimony, which is relevant to the promissory stop account, is that, you know, this was absolutely essential to her, and she very, very specifically said, now, you know, I won't lose any seniority benefits, and that Mr. Myers specifically told her, no, you will, you will get all your seniority benefits that you'd be entitled to. I have one more question. Do you have anything, or what do you know, or can you say about the legislative history of the superannuation statute? We got that. I think both sides got that, and, you know, it's just no help. Okay. And like I said, obviously, this is a case of first impression, and probably last impression. Thank you. Thank you, Counsel. Counsel? May it please the Court. My name is Stanley Eisenhammer. I represent the Defendant Affiliate, the Board of Education of Carlisle Community Unit School District No. 1. This case involves the payment of a stipend based on the length of service in the school district, pursuant to a collective bargaining. As such, the 10-year-old laws are irrelevant to the resolution of this issue, regardless whether the plaintiff has 10 years, super 10 years, or a stationary teacher. 10-year laws do not govern teacher pay. They only govern how teachers are dismissed. Moreover, under the Supreme Court's decision in Compton, the courts do not have original jurisdiction over disputes arising out of the collective bargaining agreement. So collective bargaining determines whether or not the time needed for tenure? No, tenure is governed by the law. Well, then why doesn't our interpretation of the super 10-year statute determine whether or not she's 10 years in Carlisle? Because for really two or three reasons. The first of which is that tenure determines whether they have tenure, which means that a teacher cannot be dismissed for an arbitrary or political reason. It must be for cause. Second, tenure governs how a teacher is dismissed when there's a reduction of force. Nothing in the tenure statute governs how they're paid. That's governed by the CBA. But how they're paid is a consequence of the CBA. The question here is whether or not she had the requisite time and was tenured. And that's what we're asking you. We're not interpreting the CBA. The damages that she suffered are a consequence of the CBA. It would have been a consequence of the CBA whether it was the 2002 CBA, 2005, or the 2006, right? Right. So the initial question is was she tenured or not? No, she was not tenured. She was not tenured? She was not tenured. Because the way the statute reads is that you have, when you're in a co-op, you do have rights to a, in a RIF situation, when the program is eliminated, you have rights in all the other districts to a vacant position as opposed to the least senior position, or a vacant position in those districts. Once you go to that district, once you go to that district, like any other teacher, you lose your tenure in any other district. So if I move from District A to District B... Except for those people who were employed prior to 1987. Right. So everybody here is post-1987. Let's talk about at this point. Okay. So she has tenure in Sandoval, where she works. She does. She does. There's no question about that. Okay. I thought you had admitted that in your brief. No. Did I admit it? Yes. You did. But then at that point, she has tenure in Sandoval. She no longer has tenure in the co-op, and she no longer has tenure in any of the other districts, just like she moved to another district. You know, you don't keep tenure forever. If she left Sandoval, let's say she left Sandoval and retired for a bit of time, took another job in a private industry, she doesn't come back to Sandoval with tenure. Teachers don't come back after there's a break in service of tenure. There's no break in service here. What this lady did is special education is a very separate and unique. It's not like you're employed by a school district anymore. Right. You know that. So this lady had 21 years under the auspices of a special education district. She was a pre-1987 teacher. Right. She had tenure at Sandoval. She was offered a job. She's claiming that the principal, I think he was, had the authority and was an agent of the board and is stopped from denying his representation that he offered her 22 years. So if he did that, if you assume that's true, then how does she now have tenure? Because you can't. If you assume that that's true. Right. Because otherwise, like the bargaining agreement. She was not part of your CBA at the time. But when you walk in. A hire. When you were hired on a labor raft, the principal or the board cannot offer a different amount of money than is required under the CBA. I can't offer $100,000 to a teacher if the CBA requires to pay X amount of money. Exactly. And he put her on step 22. Because the collective bargaining allows that. He could have given her less service. And they admit that they could have gotten her less service. But I guess in order to recruit, and we do this now in collective bargaining, some positions are harder to fill than others. And the fact is that most districts don't have any money. So you try to hire at the lowest level, but if you have to recruit somebody, you give them extra years of service. Well, it's interesting that you say that you try to hire at a lower level since that's really somewhat discriminatory. Having said that, the CBA that was in existence, as I understand it, in the year she was hired, gave the district the discretion of where to place new hires on the salary schedule at a level that matched their previous experience. So under the terms of the CBA that was in effect at the time she was hired, it appeared to me that the board, through its agent, had the authority to make these promises to her. Now, I'm not saying the promises were made. I just want to know if the board, if I'm correct, that the CBA had delegated the authority to the board. The board is not going to meet with the teacher. No, it didn't delegate the authority. It can't delegate the authority. The CBA gave the district the discretion of where to place new hires on the salary schedule at a level that matched their previous experience. Right. It gave it to the board. Right. Well, the board doesn't meet with teachers. What? The board doesn't meet with teachers. Well, they don't meet with teachers, but the board is the one who hires the teachers in the end and approves whatever salary. So he doesn't have the authority to hire anybody at whatever he wants to. But he has the authority to make the recommendation. Make an offer. Make an offer. Actually, an offer to make an offer. Whatever. The board accepts it. Okay. Right? Do we have any board minutes accepting her as a teacher? I think so. What did they say? I think it just hires the teacher. I don't know. I can't recall the minutes, so I can't really tell you. I didn't see them either. It should be in the minutes. I didn't see it. If it's in the minutes, it would have at least ratified the representations of the principle. Right. Please don't step on my conversation. I'm sorry. I'm sorry. I don't want to be argumentative. I tend to do that. I'm sorry. Me too. Go ahead. For example, 22 years of service does not equate with tenure. For example, if that teacher had come from another district as a non-tenured teacher, came into the district, the board had the authority to grant her 22 years of service. If, let's say, she had taught in another district for 22 years, she would come into that district as a non-tenured teacher, but the board could grant her 22 years of service. Well, doesn't that just show that, again, it goes back to the interpretation of the supertenure statute? No, it goes back to the interpretation of the CBA. I still don't get that. I mean, isn't the CBA bound by the supertenure statute? With respect to tenure, but not to seniority, maybe I should get to that issue. Well, isn't tenure really what the important issue is? No, it's seniority. There's no question now she has tenure. Well, yeah, I'm talking about at the time that she hired. But in other words, the supertenure statute does not say, let's say she did have tenure, it doesn't say how much you should pay her or how much seniority within that district you should get. The statute, by the way, does say, talks about length of continuous service. Length of continuous service applies under the tenure law in only one situation, when you're ripped, that you must rip by length of continuous service. However, the statute also gives the union and the board, if there's a union, the right to define what length of continuous service is. So even if you say length of continuous service somehow applies in this case, in this particular case, with the stipend, the two stipends, the board defined length of continuous service and the union as years of service in the district. Now, I know... And when did that definition come into play? That came into play as to whether you get the stipend or not. Which CBA defined that length of continuous service? I think all of them did, and I don't think it changed. You say you're telling me that at the time she was hired, the CBA would have defined length of continuous service? Well, yes, because it says... Let me ask you this. Yeah. Is the CBA from 2001 in the record? Yes. Okay. So when I look at that, length of continuous service is going to be equal to years in the district? Yes, with respect to that stipend. It says years of service in the district. So it's I for age, K and L, because she agreed that one stipend was just like that. So that's why it is, by the way. I see the reduction in force or width, as you call it, in the statute. Oh, yes, I do. In the section that we're talking about, the 1987 super tenure statute. That section. Is in 2411 and 2412. I know it's in that generally. Yeah. But in the one section that protects teachers prior to 1987, does it really talk about risk situations? Yes, it does, because if you move from one district to another, you have a right to a vacant position. But that's where this whole voluntariness comes in. I mean, I understand your argument that you want to protect teachers in the time they have if there's a reduction in force. I get that. But I don't understand why you can argue that if she voluntarily leaves her job and a district accepts her at 22 years, why she's not super tenure. I mean, I think the super tenure thing is not really as important an issue. It's not. It is important. Do you think that, I mean, she's tenured. She's tenured. It's a matter of whether she has an extra four years or not, right? Yes. Well, she was tenured in Sandoval. I don't disagree with that. But when she came to Carlisle, which is one district removed, she doesn't have tenure. Okay, so I see. You're saying, yeah, she doesn't have tenure at all. Right. So for a non-tenured teacher, you put her on a 22-step salary. You can. And that's been done in different places because of need to have special ed teachers. Why would a teacher leave 21 years of service if she wasn't made a promise? Well, she was made a promise to be on 22 years of service. She wasn't made a promise that she had tenure. There was no finding of that. I know there was not. And even if there was, that can't overrule whatever the statute is. Okay, well, how do you define the difference between tenure and seniority? I'm not sure I have it. Okay. The statute defined tenure is whenever you serve four years in a district. Length of continuous service is defined in a school district as length of continuous service in a district. The statute allows— Okay, you haven't used the word seniority yet. Because the tenure laws do not use the term seniority. Period. They use length of continuous service. That's the only time it's used. It's the only time it's used. And it's used to define how you order teachers in a RIF situation. That first non-tenured teachers go, then teachers in order of length of continuous service. Tenure teachers in length of continuous service. That's the only time it's used. The statute allows the union and the board, if there's a collective bargaining agreement, to define exactly what length of continuous service means. Does it include tenure service? Is it just tenure service? Does it include non-tenured service? Tenured service? What do you do about leaves? That's left for the board and the union to define. But only with respect to— And you got right to the heart of my question, and that is this. Did this principal have the authority under that CBA to say to her, we will acknowledge your 21 years of seniority, and we will place you on step 22 as a length of continuous service? Did he have the authority? That's all I want to know. No. Why not? Because the only authority is only the board's. Well, he's an agent of the board. He's an agent of the board, but— And if the board—wait. He's an agent of the board, and if he made that statement— Yes. I'm not deciding that question. And the board ratified his hire, then he did have the authority. Well, the board had the authority. We get to the same conclusion in different ways. Okay, I'll ask you the different question. Did the board have the authority— Yes. —to make the representation? Yes. Okay. So now we have a question of fact. Right? Right. But they didn't grant her tenure. We know that because— They have the authority. They don't have the authority to grant tenure. I just used the word length of continuous service. Length of continuous service. Well, further, they do pursue it to the top of the bargaining agreement because there's a top of the bargaining agreement. That's my question. They can't not do what's on the bargaining agreement says. My question to you very specifically was, did the board have the authority, at the time she was hired under that CBA, to grant her the 21 years length of continuous service? She had 21 years. They had the right to place her on step 22 under the— That was my question. Well, the answer is they did grant her 22 years. Did they have the right to hire her and grant her the 21 years of continuous service for Sandoval as credit into Garlisle under that CBA? For purposes of placing her on the salary schedule. For purposes of seniority. Did they have the right? No. Not for seniority. But for— Why not? Because the contract defines seniority. Okay. So there's a different definition for seniority under that CBA. Right. And what does that say? Well, I know with respect to those stipends, it says— I don't want to benefit. I want a definition. How is seniority distinguished between length of continuous service in the CBA? That was in effect the time she was hired. I don't—I would like to answer that. So you don't know. It's in there, but I can't recall exactly what it says. That's the operative question here. And you can't tell me. Well, I can't tell you with respect to RIF because it says— No. I'm talking about the CBA that was in effect when she was hired. What was the board's authority? Because it's different now. Okay. Because whether it is for RIF, it's separate. It can define it. The union and the board can define it, whichever way they want it as long as it's objective, for what kind of benefit you're providing under the CBA, which is one of the reasons that this should go to the arbitrator to begin with. Well, but what you just said is really the crux of the issue, and that is that the board or the union can define seniority for purposes of length of continuous service. Right. I think that's just what you said. Right. So if the board had the authority and one of their agents made the representation that we're going to give you 21 years of continuous service as seniority— No, he didn't. You're saying what he did or he didn't do. I'm asking what he had the authority to do as an agent or board. Okay. The only authority he had was to recommend to the board where she would be placed on the salary schedule. Everything else was mandated by the collective bargaining contract. He couldn't say you're going to get, for example, the benefit we're talking about. We're going to give you X amount of years more to get this benefit than what the collective bargaining agreement says. So the only discretion the board and that individual had was where they placed them on the salary schedule, by the collective bargaining agreement. Well, you told me that the board had the discretion or the authority, I'm sorry, to define seniority— Well, or the union. Or the union, I'm sorry. You told me that the board or the union had the authority to define seniority in terms of length of continuous service. What you can't tell me is how that was defined in the year 2001, right? Right. I can't recall looking at the— So you can't tell me what authority the board had when they hired this woman. Well, I can tell you they had it in things that are relevant. They were mandated by the collective bargaining—they had the authority to place her on the salary schedule. That's given. Okay? They had discretion because the union allowed it. That's given. So the benefit that was similar to the benefit he's arguing about, they defined seniority— Those are damages. Those are damages. I'm talking about promissory estoppel now. Okay. On the promissory estoppel, first, promissory estoppel doesn't apply because there's a contract. Promissory estoppel does not apply when there's a contract. Second, there's no— I can't— There's no detrimental— Go ahead. There was no detrimental reliance. They cite, for example, the case, the Lawrence case, where the individual didn't know that they were denied this benefit until they requested the benefit upon retirement. Here, every year, every year she was given a contract that said she didn't have tenure and consequently she didn't have seniority to what she's claiming. And it's also the—I'm sorry, the riffle list didn't give her that seniority. Okay. It actually answered my question. The riffle list says what her seniority was under the PAT Act, and that didn't give her all the 22 years. Okay. Thank you very much. Thank you, counsel. You were very kind. Thank you. Not to say that you weren't kind. It's just we had a moment. Well, I hope I was. We have more work to do. I'll give you a few extra minutes if you need to. Thank you. I'll be brief. If, except the interpretation that defendant is arguing for, that she did not have tenure when she moved from Sandoval to Carlisle, then the statute is absolutely, totally meaningless. What does it mean? I mean, it says, shall, in turn, the contractual continue service in each participating district. Carlisle is a participating district. How do you read that language to say, oh, but if you move from one district to another district, you lose your tenure in each participating district? The statute doesn't say that. I think he's reading that section in the context of the entire statute, which does talk about protecting teachers. In a, you know, a riffle situation, somebody who's been 21 years, the school district wants to get the lowest paying family. Right. He's reading it in the context. Well, but what we have to remember, Your Honor, is that this is the outlier. This is the exception. This is totally different than any other category of teachers, not only special ed teachers, but it's narrowed to special ed teachers with tenure on September 23rd, 1987. So we can't go to the general rules and say they apply here because the statute very, very specifically says they don't. And I mean, there was obviously a reason for it, and that is to encourage, to allow special ed teachers to move around because they have such unique skills. And they're difficult to find. Difficult to find. Very difficult to find. Let's just assume for the fact that we accept your argument on tenure. I really am having trouble with the seniority because that's where the benefits come in. And was she given a seniority list every year that showed where she was on the seniority list? She was given a, each teacher was given a contract to sign that had a bunch of language, and then at the bottom, a little tiny thing. Well, that's not a list. No, it's not a list. I know that about the contract. Okay. Was there a list? No. The only list that's in this record is a list that Mr. Wrench, the executive director of KSED, sent every year saying this is the special ed seniority list for special ed teachers. And she was on there every year with the total number of years that she had worked in KSED because pursuant to that opinion they got, and I think the clear interpretation of the statute, again, these teachers are unique. So when counsel said there was a list, there's no list.  There was a KSED list. Yeah. There was a KSED list that showed the full amount of the seniority. And Your Honor made the comments over time not saying the promises were made, but, in fact, on this record, Mrs. Giardini testified without equivocation that they were made. Mr. Meyer was confronted with his deposition testimony where he said, well, under oath and deposition, that if she testifies to that at trial, which she did, I will not be able to refute it. I will not be able to dispute her. I don't remember. And as far as the issue of authority, both Mr. Meyer and the superintendent, Mr. Nossack, indicated that the principal has authority. He doesn't have authority to maybe promise to move, but he has authority from the board to make the representations as to what the terms of appointment would be and to explain those to her. And it was so important to her, and she made so clear that she wanted to make this move. She wanted to come to Carlisle where her husband worked, where she lived in that area, but she wasn't going to make the move that was going to cost her all those years of experience, which ultimately it ended up doing. And if that isn't a classic case of promissory stoppel with full performance by the promisee, I don't know what is. So we think under either alternative, under the de novo review of the supertenure statute, this court can conclude that she was in fact, would have to conclude that she was in fact a tenured teacher. That means she had to have minimum amount of seniority in 2002 recognized by the Carlisle district, but wholly apart from that under the common law theory of promissory stoppel, as we've cited in our brief. A court, the trial court obviously is the one who weighs the testimony and credibility, but a court can't ignore otherwise compelling and uncontradicted sworn testimony unless there's something in the record to indicate. And in this record, there was Mrs. There were only two people in that room. Mrs. Garagini clearly testified that that that promise was made to her and she was very specific about it. And Mr. Myers, I don't know. Thank you. We will take a short break. Next, please. All right.